JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Robert Rakoczy, appeals from the judgment of the Cuyahoga County Court of Common Pleas dismissing his petition for postconviction relief without a hearing. For the reasons stated below, we affirm.
 FACTS AND PROCEDURAL HISTORY {¶ 2} The facts of this case were set forth by this court in our opinion dated March 28, 2002, in which we affirmed appellant's convictions. State v. Rakoczy (Mar. 28, 2002), Cuyahoga App. Nos. 79998, 79999. We stated:
 {¶ 3} "Appellant's convictions result from his indictment in two separate cases. In Case No. CR-398017, appellant was indicted on one count of forcible rape of a seven-year-old female, R.C. 2907.02(A)(1)(b) and (A)(2). In Case No. CR-402373, appellant was indicted on six counts, vis., five counts of pandering sexually-orientated matter involving a minor, R.C. 2907.322; and one count of possession of criminal tools, to wit: a computer, R.C. 2923.24. Appellant's cases were assigned to the same court for trial. Appellant entered pleas of not guilty to the charges and retained counsel to represent him.
 {¶ 4} "A lengthy discovery process ensued in appellant's cases. Eventually appellant executed written waivers of his right to a jury trial in each case. Prior to accepting appellant's written waivers, the trial court first carefully explained to him on the record the nature of the offenses of which he was accused and the maximum penalties involved for each offense. The trial court further assured itself appellant realized exactly what he was relinquishing in executing the waivers.
 {¶ 5} "Appellant's cases thereupon jointly proceeded to trial. The State presented the testimony of eleven witnesses over the course of the next three days; these witnesses included the female child alleged to be the rape victim and an expert in computer forensic work.
 {¶ 6} "The record reflects the State for the most part had concluded its case-in-chief when appellant's counsel indicated to the trial court [that] appellant desired to enter into a plea agreement. The trial court enjoined appellant to carefully consider the matter, requesting appellant to sleep on his decision.
 {¶ 7} "The proposed terms of the plea agreement thereupon were set forth by the trial court as follows:
 {¶ 8} "`I do want to just briefly spread on the record the plea bargain as I understand it that's been offered in effect by the State of Ohio to the defendant. It would be that on the single rape charge in Mr. Rakoczy's 398017 case, that the State of Ohio would remove the allegation that this rape was committed with the use of force or threat of force.
 {¶ 9} "`By deleting that language, this rape charge ceases to carry a mandatory life sentence and merely carries a mandatory prison sentence. The prison sentence could be three, four, five, six, seven, eight, nine or ten years. But the State of Ohio only agrees to do this if Mr. Rakoczy agrees to a ten-year prison sentence as the punishment, so this would be amending the rape charge down to be a first degree felony carrying a mandatory prison sentence, with the defendant agreeing to serve the ten-year prison sentence, which is in effect a maximum sentence on that reduced rape charge. But of course that's a greatly reduced sentence from the mandatory life sentence.
 {¶ 10} "`In addition, the State of Ohio would agree that Mr. Rakoczy pleads guilty on all six of the fifth degree felonies that are charged against him in Case Number 402373. There are, in that case, five counts of pandering. Each of those counts are (sic) fifth degree felonies, their maximum sentence is one year. The State of Ohio wants an agreed sentence from Mr. Rakoczy that he agrees to serve consecutively, meaning after the ten-year sentence for the rape, one additional year consecutively for each of those five counts of pandering.
 {¶ 11} "`Now, if you serve one year consecutively on each of the five counts, that adds five years to the prison sentence. So now we're up to, in effect, an agreed sentence of fifteen years. They also want a plea of guilty to the possession of criminal tools. They want the agreed sentence to reflect a one-year concurrent sentence there; therefore, pleading guilty, getting a one-year sentence on that final sixth possession of criminal tools charge doesn't add any prison sentence.
 {¶ 12} "`But Mr. Rakoczy would then be pleading guilty to seven felonies, one rape, five panderings and one possession of criminal tools, and that prison sentence would be a fifteen-year term.
 {¶ 13} "`This would be, at least in the first ten years, a mandatory sentence. After that, it would not be a mandatory sentence but it would be an agreed sentence.
 {¶ 14} "`Agreed sentences mean that the defendants have no opportunity for an early release program or like shock incarceration, judicial release, used to be called shock probation or super shock probation. No shock incarceration, boot camp programs or anything like that. It says you go and serve your sentence.
 {¶ 15} "`* * *
 {¶ 16} "`Mr. Rakoczy would also * * * have to stipulate to a finding that he is a sexual predator, that of course has the impact that upon release from prison, Mr. Rakoczy would have to report to the county sheriff of his county of residence and verify his residence address and meet other similar requirements for the balance of his life.
 {¶ 17} "`And that is my understanding of the plea bargain. There may be court costs. There is (sic) no fines that I'm aware of that were part of that.'"
 {¶ 18} "At that point, the trial court continued the proceedings in order for appellant to consider whether to accept the foregoing offer from the State.
 {¶ 19} "The following day, appellant informed the trial court he desired to enter into the plea agreement. A colloquy between the trial court and appellant followed. Appellant informed the trial court he was thirty-eight years old, had graduated from high school and had attended three years of college, was not under the influence of either alcohol or medications, and had no history of mental illness. In response to the trial court's inquiry, appellant further stated he understood that a guilty plea was an admission of his guilt of the charges.
 {¶ 20} "The trial court additionally inquired of appellant in relevant part as follows:
 {¶ 21} "`THE COURT: And you understand that you don't have to plead guilty, I explained to you yesterday, we can resume the trial, the Court would not be prejudiced in any way or hold it against you because you weren't available on time yesterday. The Court would be easily able to focus on the proper evidence and the case and exclude those things which wouldn't properly be used as evidence against you, understood?
 {¶ 22} "`THE DEFENDANT: I missed part of that.
 {¶ 23} "`THE COURT: I'm saying you understand you don't have to plead guilty here today.
 {¶ 24} "`THE DEFENDANT: Right.
 {¶ 25} "`THE COURT: And number one, that's your choice whether you plead guilty or continue the trial.
 {¶ 26} "`THE DEFENDANT: Okay.
 {¶ 27} "`THE COURT: Understood?
 {¶ 28} "`THE DEFENDANT: Yes.
 {¶ 29} "`* * *
 {¶ 30} "`THE COURT: Okay. And you understand that the right to go to trial does of course include the right to decide whether you have a judge trial or jury trial, understood?
 {¶ 31} "`THE DEFENDANT: Right.
 {¶ 32} "`THE COURT: And you know that at trial, you do always have a lawyer, can't afford one, one is appointed at no cost to you, understood?
 {¶ 33} "`THE DEFENDANT: Right.
 {¶ 34} "`THE COURT: And you understand at trial you [don't] have to testify, no one can make you talk, they can't even comment on the fact your choice was to remain silent, if indeed that's what you choose to do, understood?
 {¶ 35} "`THE DEFENDANT: Understood.
 {¶ 36} "`THE COURT: And you understand at trial the burden of proof is always on the prosecutor to prove guilt beyond a reasonable doubt on any given charge or charges. If the State of Ohio fails to meet that burden, then you have to be acquitted and discharged on that particular charge, understood?
 {¶ 37} "`THE DEFENDANT: Understood.
 {¶ 38} "`THE COURT: And now at trial, you and your lawyer do get to cross-examine all of the witnesses that come to build a case against you, you get subpoena power to bring witnesses who could build your side of the case, understood?
 {¶ 39} "`THE DEFENDANT: Uh-huh.
 {¶ 40} "`THE COURT: Is that a yes?
 {¶ 41} "`THE DEFENDANT: Yes.'"
 {¶ 42} "The trial court thereafter explained the maximum penalties associated with the amended charges against appellant, cautioning that mandatory incarceration means that the offender, once he or she is convicted of such a charge, is not eligible for a non-prison sentence. `Pursuant to the plea agreement, moreover, instead of the Court choosing the number of years [of] mandatory incarceration, * * * you agree to a sentence of ten years * * * for conviction of rape for the kind of rape they (sic) changed this charge down to.' Appellant assured the trial court he understood. The discussion of the agreed sentence with regard to the pandering charges was to the same effect.
 {¶ 43} "After the trial court explained the nature of the charges and the statutory post-release control provisions applicable to appellant, appellant pleaded guilty to the amended charge in CR-398017 and the charges in CR-402373. In doing so, appellant answered `yes' when the trial court reminded him that he had said `[he] understood * * * the penalties that attach if you are convicted.'
 {¶ 44} "The trial court ultimately accepted appellant's pleas, found him guilty, and proceeded to sentence appellant. The trial court first considered the statutory sentencing factors before concluding the agreed sentence was appropriate."
 {¶ 45} Appellant subsequently appealed from his convictions, arguing that the trial court had failed to comply with Crim.R. 11 in accepting his guilty plea because it did not determine that he understood he was waiving his constitutional rights by the entry of his pleas and did not address its prerogative to proceed immediately to sentencing. This court rejected appellant's arguments and affirmed his conviction, finding that the trial court's colloquy with appellant was sufficient to ascertain that appellant understood he was relinquishing his constitutional rights by entering his guilty plea and that the trial court "went to great lengths on two separate occasions" to inform appellant of the fifteen-year sentence he would serve as a result of his plea. State v. Rakoczy (Mar. 28, 2002), Cuyahoga App. Nos. 79998, 79999. On December 4, 2001, while his appeal was pending, appellant filed a petition for postconviction relief pursuant to R.C. 2953.21. In his petition, appellant asserted that he was denied his right to effective assistance of counsel because his trial counsel gave him inaccurate information about his potential sentence and did so in a threatening manner. Specifically, appellant alleged that his counsel advised him that the charges in the indictment carried a sentence of life without any parole and told him, "you will never see the light of day if you don't take this plea."
 {¶ 46} Appellant also asserted that his guilty plea was not entered into knowingly, intelligently and voluntarily, in compliance with Crim.R. 11, because "neither petitioner's counsel nor the trial court explained to him the concept of waiver."
 {¶ 47} On June 13, 2002, the trial court denied appellant's petition without a hearing. Appellant appealed the trial court's judgment denying his petition, raising three assignments of error for our review.
Assignments of Error
 {¶ 48} R.C. 2953.21, which governs petitions for postconviction relief, provides in pertinent part:
 {¶ 49} "(A)(1) Any person convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.
 {¶ 50} "* * *
 {¶ 51} "(C) * * * Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of court, and the court reporter's transcript. * * * If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal."
 {¶ 52} In his third assignment of error, appellant contends that the trial court committed reversible error in dismissing his petition without first conducting an evidentiary hearing. It is well-settled, however, that a hearing is not automatically required whenever a petition for postconviction relief is filed. State ex rel. Jackson v. McMonagle
(1993), 67 Ohio St.3d 450; State v. Strutton (1988), 62 Ohio App.3d 248, paragraph one of the syllabus. The pivotal concern is whether there are substantive constitutional grounds for relief which would warrant a hearing based upon the petition, the supporting affidavits and materials, and the files and record of the cause. Strutton, supra. A petitioner is entitled to postconviction relief under R.C. 2953.21 only if the court can find that there was such a denial or infringement of the petitioner's rights as to render the judgment void or voidable under the Ohio or United States Constitutions. State v. Perry (1967),10 Ohio St.2d 175, paragraph four of the syllabus. Where a petition for postconviction relief fails to allege facts which, if proved, would entitle the petitioner to relief, the trial court may so find and summarily dismiss the petition. Perry, supra, paragraph two of the syllabus.
 {¶ 53} We conclude that the trial court did not err in dismissing appellant's petition without holding an evidentiary hearing. A review of the petition, the supporting affidavit, the file and the record of the case leads us to conclude that appellant has failed to raise a genuine issue of material fact that there are substantive constitutional grounds for relief. The deficiencies of appellant's claims are discussed in detail below in our analysis regarding appellant's other assignments of error.
 {¶ 54} In his first assignment of error, appellant contends that the trial court erred in dismissing his petition without a hearing because he did not receive effective assistance of counsel, in violation of his state and federal constitutional rights.
 {¶ 55} In the affidavit attached to his petition, appellant averred that he did not receive effective assistance of counsel because his counsel advised him that the charges in the indictment carried a possible sentence of life without any chance for parole. Appellant also averred that defense counsel "had not sufficiently investigated defense expert and other witnesses and evidence as I had requested." In his petition, appellant argued that the incorrect information from defense counsel, provided in a threatening manner designed to intimidate him, "induced him to plead guilty, at a vulnerable time, when he really wanted to conclude his trial with a decision on the merits."
 {¶ 56} In order to establish ineffective assistance of counsel, a defendant must demonstrate that his or her counsel's performance fell below an objective standard of reasonable representation and that he or she was prejudiced by that performance. State v. Bradley (1989),42 Ohio St.3d 136, paragraph two of the syllabus, certiorari denied
(1990), 497 U.S. 1011. "Before a hearing is granted, the petitioner bears the initial burden in a postconviction proceeding to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and also that the defense was prejudiced by counsel's ineffectiveness." State v. Jackson (1980), 64 Ohio St.2d 107,111.
 {¶ 57} Here, appellant presented no evidence with his petition to indicate what "defense expert and other witnesses and evidence" he was referring to in his petition. He also failed to present any evidence showing how he was prejudiced by his counsel's alleged failure to adequately investigate the alleged witnesses.
 {¶ 58} In addition, appellant failed to demonstrate that he was prejudiced by his counsel's alleged inaccurate information regarding the prison sentence or the alleged intimidating manner in which counsel presented the information. The record reflects that after three days of testimony by the State's witnesses, appellant's counsel informed the trial court that appellant wished to enter into a plea agreement. The trial court then reviewed the plea agreement with appellant and explained how the penalties for the reduced rape charge would vary from the original charge. The trial court then cautioned appellant to carefully consider the matter and to think about his decision that night.
 {¶ 59} The next day, before accepting appellant's plea, the trial court specifically told appellant that he was not required to plead guilty and that he could continue the trial, with no prejudice to him. Appellant stated, however, that he chose to enter a plea. The trial court then reviewed with appellant the constitutional rights he was giving up by pleading and explained the penalties associated with the amended charges against him.
 {¶ 60} Thus, even assuming that defense counsel intimidated appellant or misinformed him regarding the potential sentence, the record reflects that the trial court correctly informed appellant of the potential sentence for the rape charge. In addition, the record clearly reflects that the trial court gave appellant several opportunities to decide not to plead guilty.
 {¶ 61} Accordingly, we conclude that nothing in the evidentiary materials, when considered against the entire record, raises an issue of fact that appellant was deprived of effective assistance of counsel. The trial court did not err, therefore, in dismissing appellant's claim without an evidentiary hearing.
 {¶ 62} In his second assignment of error, appellant asserts that the trial court erred in dismissing his petition without a hearing because his guilty plea was not entered into knowingly, intelligently or voluntarily. Appellant contends that his plea was involuntary because he did not understand that by entering his plea, he would be relinquishing his constitutional rights.
 {¶ 63} This argument was considered and rejected by this court in appellant's direct appeal. We stated:
 {¶ 64} "Appellant in this case had the benefit of several months of discovery and three days of trial in which he exercised the constitutional rights the trial court outlined for him during its colloquy. From the context of the trial court's questions, therefore, it is clear appellant, a former college student, understood that by entering his plea he was relinquishing those rights." Rakoczy, supra.
 {¶ 65} Under the doctrine of res judicata, constitutional issues cannot be considered in postconviction proceedings brought pursuant to R.C. 2953.21 where they have already been or could have been fully litigated by the defendant, either before his or her judgment of conviction or on direct appeal from that judgment. State v. Perry
(1967), 10 Ohio St.2d 175, paragraph seven of the syllabus; State v.McCoullough (1992), 78 Ohio App.3d 587, 591. Issues properly raised in a petition for postconviction relief are those which could not have been raised on direct appeal because the evidence supporting such issues is outside the record. State v. Slagter (Oct. 18, 2001), Cuyahoga App. No. 78658, citing State v. Milanovich (1975), 42 Ohio St.2d 46, 50; State v.Bates (Jan. 21, 1999), Cuyahoga App. No. 75093. If an issue has, or should have been raised on direct appeal, the trial court may dismiss the petition on the basis of res judicata. State v. Spisak (Apr. 13, 1995), Cuyahoga App. No. 67229.
 {¶ 66} Because appellant's claim regarding his guilty plea was raised in his direct appeal, the trial court properly dismissed appellant's claim on the basis of res judicata.
 {¶ 67} Appellant's first, second and third assignments of error are therefore overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, J. and COLLEEN CONWAY COONEY, J. CONCUR.